IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAROUN MOORE<br>4635 East 175th St.<br>Cleveland, Ohio 44128<br><br><br><br><br><br>Plaintiff,<br><br>v.<br><br>AWP, INC.<br>c/o CT CORPORATION SYSTEM,<br>Statutory Agent<br>4400 Easton Commons Way<br>Columbus, OH 43219<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br>COMPLAINT FOR VIOLATIONS OF<br>THE FAIR LABOR STANDARDS<br>ACT AND THE OHIO MINIMUM<br>FAIR WAGE STANDARDS ACT<br><br><br>(Jury Demand Endorsed Herein) |

Plaintiff, Haroun Moore, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES

1. Moore is an individual residing in Cuyahoga County, Ohio.

2. At all times relevant herein, Plaintiff was an employee within the meaning of 29 U.S.C. 203(e) and Section 34a, Article II, of the Ohio Constitution.

3. AWP, Inc. ("AWP") is a domestic corporation with its principal place of business located in the city of North Canton, state of Ohio.

4. At all times relevant herein, AWP was an employer within the meaning of 29 U.S.C. 203(d) and Section 34a, Article II, of the Ohio Constitution.

## PERSONAL JURISDICTION

5. AWP hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over AWP comports with due process.

6. Moore worked in this judicial district, was paid unlawfully by AWP pursuant to work performed in this district and/or was hired and terminated in this district.

7. This cause of action arose from or relates to the contacts of AWP with Ohio residents, thereby conferring specific jurisdiction over Defendant.

## SUBJECT MATTER JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Moore's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA") and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

10. Venue is proper in this District because Defendant does or did a sizeable portion of its business in this District, and many of the wrongs herein alleged occurred in this District.

## FLSA COVERAGE

11. At all times referenced herein, AWP formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times thereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on

goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. At all times material to the Complaint, Moore and those similarly-situated directly participated in the actual movement of things in interstate commerce by regularly working upon intrastate and interstate roads and highways and by travelling outside of their home state to perform their job duties.

## FACTS

13. AWP holds itself out as the largest traffic control company in the United States.

14. AWP provides flagging operations, traffic control services, interstate lane closure services, emergency road closure services, temporary traffic control for railway traffic, and event traffic control services.

15. AWP employs individuals as "Protectors" and/or "Flaggers" to provide traffic control services ("Protectors").

16. AWP's Protectors are hired to perform flagging in a two-person crew with a flagging truck at each jobsite.

17. Nearly 95 percent of the jobs performed by AWP include two "Protectors" and one flagging truck.

18. Moore is a former employee of AWP.

19. Moore began his employment with AWP in or around February of 2019.

20. At all times referenced herein, AWP provided Moore with a flagging truck that he was required to drive to each worksite he was assigned.

21. The flagging truck Moore was assigned weighed less than 10,000lbs.

22. At all times referenced herein, Moore's principal job duties included picking up other Protectors ("Non-Drivers") at meeting locations determined by AWP using his company issued flagging truck and transporting them to each AWP worksite Plaintiff worked at that day before returning them to the meeting location at the end of the day ("Transportation Duties").

23. Performing Transportation Duties required Moore to deviate from the route he would have driven had he driven straight to and from his home and each worksite.

24. AWP required Moore to perform Transportation Duties.

25. Moore did not perform Transportation Duties voluntarily.

26. Moore could not refuse to perform Transportation Duties.

27. Prior to each shift, Moore was sent text messages by AWP that informed Moore of the location of the first job site for the following day, along with information regarding who he was transporting and where to meet them.

28. At all times referenced herein, Moore was required to and did transport AWP equipment in his company assigned truck, to include standard flagging equipment, radios, safety strobe lights, and exterior advertisements for AWP's services.

29. AWP required Moore to use its truck for some of the following reasons:
    a. Trucks like the one that was assigned to Moore are included as part of AWP's standard quotes to customers, customers are billed for use of the trucks, and the trucks are parked within the worksites as a safety and protective measure;
    b. Each worksite requires at least two flaggers working at the same time to be effective;
    c. Protectors are required to use AWP's truck to setup their worksite;

    d. For safety reasons, AWP prohibited flaggers from parking their personal vehicles at worksites; and

    e. Moore's use of AWP's truck accomplished the other necessary functions of AWP's business which inure entirely to AWPs' benefit – the transportation of necessary equipment and supplies, as well as employees, to perform the work at the worksites.

30. The time Moore spent performing Transportation Duties was compensable under the FLSA and the OMWFSA because it was not incidental to his employment. See 29 U.S.C. § 254(a)(1); 29 U.S.C. §254(a)(2); 29 C.F.R. § 785.38; *Wilson v. PrimeSource Health Care of Ohio, Inc*., No. 1:16-CV-1298, 2017 WL 2869341 (N.D. Ohio July 5, 2017)( holding that a meeting to carpool triggered the beginning of the workday); *Meeks v. Pasco Cry. Sheriff*, 688 Fed.Appx. 714, 717 (11th Cir. 2017) (holding that the workday was triggered by a county employer requiring employees to pick up county vehicles with tools at secure work sites); *Herman v. Rich Kramer, Const., Inc*., 163 F.3d 602, 603, 1998 WL 664622 (8th Cir. 1998) (travel time compensable after pick up of tools, supplies, and employees from the shop) *Burton v. Hillsborough Cnty*., 181 F. App'x 829, 834-35 (11th Cir. 2009) ("**[W]here an employer's mandate or job requirement interrupts an employee's home-to -work and work-to -home path, the travel time necessary for the employee to fulfill that requirement falls outside of exempted activity in § 254, and is therefore compensable under the FLSA**.")[1]

31. The worksites Moore worked at changed regularly and were often located in excess of one hour from the meeting or "pick-up" location.

32. Moore often worked at more than one worksite in a single day.

---

[1] **Emphasis** added

33. At all times referenced herein, Moore would record his hours of work on an AWP issued tablet.

34. At all times referenced herein, Moore was not permitted to clock in on AWP's tablet until he arrived at the worksite.

35. At all times referenced herein, Moore was required to clock out when he travelled between worksites.

36. Moore was not paid for any time he spent under an hour performing Transportation Duties.

37. Moore and other AWP employees were regularly required to remain at each worksite after being required to clock-out for the purpose of cleaning up the worksite and removing AWP's equipment ("Off The Clock Work").

38. The Off The Clock Work typically took Moore 20 to 30 minutes to perform.

39. Moore was not paid for work he performed for AWP off the clock.

40. Moore was not paid for travel between worksites during the same workday.

41. Moore was not paid for approximately 10-20 hours of compensable work he performed each week.

42. In failing to accurately record all compensable hours of work performed by Moore, AWP further violated the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7).

43. At all times referenced herein, Moore was paid approximately $10.50 per hour for all hours of work he was permitted to record.

44. At all times referenced herein, Moore regularly worked in excess of 40 hours per week.

45. As a result of AWP's conduct, Moore was regularly paid a sub-minimum wage.

46. As a result of AWP's conduct, Moore was regularly denied overtime premium payments for all overtime hours Moore worked.

47. AWP's violation of the FLSA was knowing and willful.

48. During the period since at least January 19, 2015, through the present, AWP has repeatedly violated and continues to violate the provisions of the FLSA and OMFWSA as set forth above.

49. In 2017, the Department of Labor Wage and Hour division determined that AWP's practices, as described herein, violated the FLSA. ("DOL Investigation and Findings").

50. Despite the DOL Investigation and Findings, AWP has failed and refused to change its pay practices.

51. AWP willfully and recklessly failed to pay Moore in compliance with the minimum wage and overtime requirements of the FLSA with full knowledge the pay practices described herein violated the law.

52. AWP did not have a good faith basis to believe that the pay practices described herein were lawful.

53. Moore's employment with AWP ended on or about January 16, 2020.

### COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
### (29 U.S.C. § 207)

54. Moore restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

55. The FLSA requires each covered employer such as AWP to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

56. Moore was not exempt from the right to receive overtime pay under the FLSA during his employment with Defendant.

57. Moore regularly worked overtime hours that AWP failed and refused to pay him for.

58. As a result of AWP's failure to properly compensate Moore at a rate not less than 1.5 times the applicable regular rate for all work performed in excess of 40 hours in a given work week, Defendant violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

59. At all times relevant to this action, AWP willfully failed and refused to pay Moore all overtime wages due as required by the FLSA, causing Moore to suffer damage in amounts to be proven at trial.

60. AWP either recklessly failed to investigate whether its failure to pay Moore an overtime wage for all hours he worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United States, it intentionally misled Moore to believe that AWP was not required to pay him overtime wages for all overtime hours worked, and/or AWP concocted a scheme pursuant to which it deprived Moore the overtime pay he earned.

61. In failing to properly pay Moore, AWP willfully and knowingly ignored specific findings by the DOL that its pay practices violated the FLSA.

62. AWP has failed to make, keep, and preserve records with respect to Moore, sufficient to determine the wages and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a).

63. AWP's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

64. AWP violated the FLSA without a good faith belief that its conduct was lawful.

65. Moore is entitled to damages in the amount of his unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including his attorneys' fees and costs.

66. Moore requests recovery of his attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

**COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.**

67. Moore restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

69. Moore regularly worked overtime hours that AWP failed and refused to pay him for.

70. In denying Moore all overtime compensation due, AWP violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

71. AWP has failed to make, keep, and preserve records with respect to Moore, sufficient to determine the wages and other conditions and practices of employment in violation of the OMFWSA, R.C. § 4111.08, et seq.

72. As a direct and proximate result of AWP's unlawful conduct, Moore has suffered and will continue to suffer a loss of income and other damages.

73. Having violated the OMFWSA, AWP is liable to Moore pursuant to O.R.C. § 4111.10 for the full amount of his unpaid overtime and for costs and reasonable attorneys' fees.

**COUNT III: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA (29 U.S.C. § 206).**

74. Moore restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

76. At times, Moore's compensable activities off the clock caused Moore's hourly rate to dip under minimum wage based on the compensation that he has already received.

77. At all times relevant to this action, AWP willfully failed and refused to pay Moore the federal minimum wages required by the FLSA, causing Moore to suffer damage in amounts to be proven at trial.

78. AWP either recklessly failed to investigate whether their failure to pay Moore at least a minimum wage for all of the hours he worked during the relevant time period violated the Federal Wage Laws of the United States, it intentionally misled Moore to believe that AWP was not required to pay him at least a minimum wage, and/or AWP concocted a scheme pursuant to which it deprived Moore the minimum wage pay he earned.

79. Upon information and belief, AWP has failed to make, keep, and preserve records with respect to Moore, sufficient to determine the wages and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a).

80. AWP's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81. AWP violated the FLSA without a good faith belief that its conduct was lawful.

82. Moore requests recovery of attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

### COUNT IV: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.01, *et seq*, BASED ON FAILURE TO PAY MINIMUM WAGE.

83. Moore restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

84. In 2019, the OMFWSA required employers to pay a minimum wage of at least $8.55 per hour to all non-exempt employees.

85. At times, Moore's compensable activities off the clock caused Moore's hourly rate to dip under minimum wage based on the compensation that he has already received.

86. In denying compensation at the requisite Ohio minimum wage rate, AWP violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

87. AWP has failed to make, keep, and preserve records with respect to Moore, sufficient to determine the wages and other conditions and practices of employment in violation of the OMFWSA, R.C. § 4111.08, et seq.

88. As a direct and proximate result of AWP's unlawful conduct, Moore has suffered and will continue to suffer a loss of income and other damages.

89. Having violated the OMFWSA, AWP is liable to Moore pursuant to O.R.C. § 4111.10 for the full amount of his unpaid wages and for costs and reasonable attorneys' fees. Additionally, AWP is liable to Moore for an amount equal to twice his unpaid wages. O.R.C. § 4111.14(J).

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Haroun Moore requests judgment against Defendant and for an Order:

a. Awarding Plaintiff unpaid minimum wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b.  Awarding Plaintiff unpaid overtime and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

c.  Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq.;

d.  Issuing a declaratory judgment that Defendant violated the recording-keeping requirements of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a), and the OMWFSA, R.C. § 4111.08;

e.  Awarding pre-judgment and post-judgment interest as provided by law;

f.  Awarding reasonable attorneys' fees and costs; and

g.  Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Haroun Moore*

## JURY DEMAND

Plaintiff Haroun Moore demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido
**THE SPITZ LAW FIRM, LLC**

*Attorney for Plaintiff Haroun Moore*